UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

                    V.                                                                                      **Criminal No. 12-576 (PGS)**

MAURICE RICHARDSON

## SECOND MOTION FOR COMPASSIONATE RELEASE

Defendant Maurice Richardson, through undersigned counsel, respectfully asks this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) for extraordinary and compelling reasons. This Court previously denied Mr. Richardson's motion for compassionate release on December 23, 2020. He has since contracted COVID-19 and asks the Court to consider this request as filed anew.

**I.**    **Procedural History**

On October 18, 2012, Mr. Richardson entered a guilty plea to armed bank robbery in violation of 18. U.S.C. §2113(a) and (d), and possession and discharge of a firearm during a crime of violence (the bank robbery), in violation of 18 U.S.C. § 924(c)(1)(A)(iii). On January 22, 2013, this Court sentenced Mr. Richardson to an aggregate sentence of 210 months in custody and three years of supervised release. His projected release to home confinement date is February 11, 2025 (*See* Def. First Motion for Compassionate Release, Exhibit A at 4). He has less than 48 months remaining on his term of imprisonment.

On May 26, 2020, Mr. Richardson filed a *pro se* motion for a reduction of sentence, which was later supplemented by counsel. The Court denied his request on December 23, 2020. In its opinion, the Court noted that "under CDC guidelines, Richardson is at a severely increased risk of

death or serious illness should he contract COVID-19; but it appears that BOP has isolated the positive inmates and staff in order to protect Richardson and others." (Op. at 5).

## II. Factual Background

Mr. Richardson is 53 years old. While in custody, Mr. Richardson was diagnosed with type 2 diabetes (adult onset), hypertension, hepatic steatosis, hyperlipidemia and testicular microlithiasis. (*See* Opinion at 2). More recently, he contracted COVID-19. In late December, Mr. Richardson along with 115 others in his building (Unit 5702) received positive test results. By January 11th, 796 inmates and 26 staff members had active COVID-19 infections (*See* Exhibit 1). On January 22nd, a 59-year-old inmate died of COVID-19. *See* https://www.bop.gov/resources/news/pdfs/20210125_press_release_ftd.pdf . Currently, 191 inmates and 38 staff have active COVID-19 infections. *See* www.bop.gov (last accessed on Feb. 25, 2021).

## III. Legal Argument

Mr. Richardson respectfully asks this Court to grant his immediate release under 18 U.S.C. § 3582(c)(1)(A). He faces an increased risk of serious illness or death if he relapses or is reinfected, given his pre-existing medical conditions. That risk is exacerbated by the BOP's demonstrated inability to stop the spread of COVID-19 at FCI Fort Dix. The outbreak at Fort Dix has continued unabated for months, during which 2014 inmates have tested positive for COVID-19 (three-fourths of the facility's population) *See* https://www.bop.gov/coronavirus/ (last accessed on February 25, 2021).

a. Mr. Richardson has exhausted his administrative remedies.

Following amendments made by § 603 of the First Step Act of 2018, Pub. L. 115-391, § 603, 132 Stat. 5194, 5239 (2018), a defendant may now move for compassionate

release without a BOP recommendation.  18 U.S.C. § 3182(c)(1)(A).  A defendant can seek recourse through the courts so long as the BOP first declines to file a motion on his behalf, or there has been a lapse of 30 days from the warden's receipt of the defendant's request for such a motion, whichever is earlier.  *Id.*

Consistent with the statute, Mr. Richardson asked the Bureau of Prisons to seek compassionate release on his behalf.   On June 8, 2020, David Ortiz, the warden for FCI Fort Dix, denied Mr. Richardson's request for compassionate release.  (*See* Def. First Motion for Compassionate Release, Exhibit B).

    b. Mr. Richardson's COVID-19 diagnosis, given his comorbidities, constitutes an extraordinary and compelling reason warranting compassionate release.

According to the World Health Organization, "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection."[1]  And according to the CDC, "[t]he immune response, including duration of immunity, to SARSCoV-2 infection is not yet understood.  Patients with MERS-CoV are unlikely to be re-infected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19."[2]  This is particularly true for those who had only a mild version of the illness.  In early testing, not all individuals infected with COVID-19 developed antibodies.  In particular, mild cases of

---

[1] *"Immunity passports" in the context of COVID-19*, WHO (Apr. 24, 2020), *available at* https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19.

[2] *Clinical Questions about COVID-19: Questions and Answers*, CDC, *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.

COVID-19 can resolve before significant and enduring levels of antibodies are found.[3] Indeed, there are a number of reported cases of individuals who have "recovered," tested negative, and later tested positive again.[4]

      Regrettably, inmates in BOP custody have died from COVID-19 after BOP determined they had "recovered" from the virus, as documented in Bureau's official press releases:

---

[3] Robert D. Kirkcaldy et al., *COVID-19 and Postinfection Immunity*, JAMA (May 11, 2020), *available at* https://jamanetwork.com/journals/jama/fullarticle/2766097.

[4] *See, e.g.*, Sarah McCammon, *13 USS Roosevelt Sailors Test Positive for COVID-19, Again*, NPR (May 16, 2020) (reporting that 13 sailors who had apparently recovered from COVID-19 and received negative test results had tested positive for a second time), *available at* https://tinyurl.com/y7g7ee8u; Brittany Mejia, *A patient's return to hospital COVID-19 unit underscores uncertainty to come*, L.A. Times (May 13, 2020) (reporting that patient was hospitalized with COVID-19, discharged in early April, readmitted about two weeks later, and tested positive a second time), *available at* https://tinyurl.com/y7fpsf5y.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**
May 27, 2020

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at the FCI Terminal Island

WASHINGTON, D.C.:  On April 16, 2020, inmate Adrian Solarzano, tested positive for COVID-19 at the Federal Correctional Institution (FCI) Terminal Island in San Pedro, California.  On May 10, 2020, in accordance with Centers for Disease Control and Prevention (CDC) guidelines, Mr. Solarzano was converted to a status of recovered following the completion of isolation and presenting with no symptoms.

On Friday, May 15, 2020, Mr. Solarzano was admitted to the local hospital, due to complaints of chest pains and anxiety.  He was tested for COVID-19 by hospital staff on May 15 and 16, 2020, with negative results.  Mr. Solarzano's condition continued to decline.  On Sunday, May 24, 2020, Mr. Solarzano, who had long-term, pre-existing medical conditions, which the CDC lists as risk factors for developing more severe COVID-19, was pronounced dead by hospital staff.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**
December 18, 2020

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at FCI Lompoc

WASHINGTON, D.C.:  On Monday, May 4, 2020, inmate Christopher Carey tested positive for COVID-19 and was placed in medical isolation at the Federal Correctional Institution (FCI) Lompoc in Lompoc, California.  Institution staff provided treatment and monitored his condition.  On Wednesday, May 20, 2020, in accordance with Centers for Disease Control and Prevention (CDC) guidelines, Mr. Carey was considered recovered after completing isolation and presenting no symptoms.

On Thursday, August 20, 2020, Mr. Carey was transported from FCI Lompoc to a local hospital due to progressive paralysis requiring bedside care.  On Tuesday, December 15, 2020, Mr. Carey, who had long-term, pre-existing medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease, was pronounced deceased by hospital medical staff.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**  Contact: Office of Public Affairs
July 31, 2020  202-514-6551

**Inmate Death at FMC Lexington**

WASHINGTON, D.C.: On Friday, May 29, 2020, inmate Gerald Porter tested positive for COVID-19 and was immediately placed in isolation at the Federal Medical Center (FMC) Lexington in Lexington, Kentucky. On July 10, 2020, Mr. Porter was released from isolation based upon two COVID-19 negative tests. On Wednesday, July 22, 2020, Mr. Porter was admitted to the local hospital due to a stroke, where his condition continued to deteriorate. On Wednesday, July 29, 2020, Mr. Porter, who had pre-existing medical conditions, which the CDC lists as a risk factors for developing more severe COVID-19 disease, was pronounced dead by hospital staff.

Many courts have granted relief to vulnerable defendants who contracted COVID-19, recognizing the risk of relapse and reinfection. *See, e.g., United States v. Sholler*, 2020 WL 2512416, *5 (N.D. Cal. 2020) (granting compassionate release and finding the defendant at a higher risk of reinfection with the COVID-19 virus if he were to remain incarcerated); *United States v. Halliburton*, 2020 WL 3100089, *4 (G.D. Ill. 2020) (recognizing that, "[i]n addition to the very real risk of relapse or reinfection, Defendant also may suffer side effects from COVID-19."); *United States v. Kess*, 2020 WL 3268093, *6-8 (D. Md. 2020) (granting compassionate release where, in addition to other medical conditions, defendant was at risk of reinfection from the COVID-19 virus); *United States v. Arreola-Bretado*, 2020 WL 2535049, *3 (S.D. Cal. 2020) (granting compassionate release to a defendant who tested positive for COVID-19, noting that "she would have a higher level of medical care outside of the facility"); *United States v. Fischman*, 2020 WL 2097615, *2 (N.D. Cal. 2020) (granting compassionate release to defendant who tested positive for COVID-19 because his "age and diagnosis put him at heightened risk of becoming seriously ill").

      c. Considering the Section 3553(a) factors, a sentence of time served followed by a three-year term of supervised release is sufficient to meet the goals of sentencing.

Upon Mr. Richardson's showing of extraordinary and compelling reasons, the Court must consider the relevant 18 U.S.C. § 3553(a) factors and determine whether the circumstances warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). Section 3553(a), in turn, directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

Mr. Richardson has been in custody for more than ten years and has an anticipated release-to-home-confinement date of February 11, 2025. He has served approximately 70 percent of what he would otherwise serve. Based on his current service, Mr. Richardson has served a far greater percentage of his sentence then others who have been released since the pandemic's onset. Further, the impetus for compassionate release in the current environment is to recognize the dramatically increased risk of serious illness and death vulnerable inmates face. Neither the sentencing court nor the defendant contemplated imprisonment as a COVID version of Russian roulette. *See, e.g., United States v. Hayes,* No. 17-20292, 2020 WL 4001903 (E.D. Mich. July 15, 2020) (26 of 60 months served); *United States v. Browne,* No. 14-10369, 2020 WL 3618689 (D. Mass. July 2, 2020) (32 of 84 months served); *United States v. Robinson*, No. 18-03042 (W.D. Mo.) (served approximately 28 of his 132 month sentence); *United States v. Harrison*, 17-00264 (W.D. Mo.) (served approximately 23 of 112 month sentence); *United States v. Rodriguez-Acedo*, No. 19-3539, ECF No. 44 (S.D. Cal. July 21, 2020) (served approximately 11 months of a 37 month sentence); *United States v. Tubbs-Smith*, No. 18-20310, ECF No. 65 (E.D. Mich. July 2, 2020) (release after 26 months

of 10 year sentence to serve state sentence); *United States v. Torres*, 2020 WL 4019038 (S.D. Fla., July 14, 2020) (5 months into 24 month sentence); *United States v. Loyd*, No. 15-20394, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (release after 3 years of 10 year sentence); *United States v. Locke*, No. 18-132, 2020 WL 3101016, at 1, 6 (W.D. Wash. June 11, 2020) (compassionately releasing a defendant who had "served no more than six months of his 62-month sentence"); *United States v. Brown*, No. 18-360, ECF No. 35 (N.D. Ala. May 22, 2020) (granting compassionate release to defendant 11 months into 60 month sentence); *United States v. Ben Yhwh*, --- F. Supp. 3d ---, 2020 WL 1874125, at *2 (D. Hawaii Apr. 13, 2020) (granting compassionate release to defendant less than 13 months into 60 month sentence); *United States v. Delgado*, 2020 WL 2464685, at *1, *4 (D. Conn. Apr. 30, 2020) (granting compassionate release to defendant 29 months into 120 month sentence); *United States v. Winston*, No. 13-639, ECF No. 295 (D. Md. Apr. 28, 2020)(granting compassionate release to defendant 36 months into 120 month sentence); *United States v. Watson*, No. 18-25, ECF No. 51 (D. Nev. Jul. 22, 2020) (granting compassionate release to defendant 14 months into 48 month sentence).

Under *Pepper v. United States*, 562 U.S. 476 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id*. at 492.  Mr. Richardson has made remarkable rehabilitative efforts during his period of incarceration, participating in thousands of hours of educational, vocational and personal development programs. (*See* Def. First Motion for Compassionate Release, Exhibit A at 5).   He also participated as a mentor to young inmates in the "Save our Youth" and "Young Fathers" programs.  (*Id.*).  He has no

8

disciplinary infractions. (*Id.* at 7). Notwithstanding the nature of the offense, the BOP now classifies him as a low recidivism risk. (*Id.* at 2). Mr. Richardson's conduct since his detention in 2010 has been exemplary. His consistent, constructive efforts at rehabilitation and mentoring give rise to a compelling inference of a man who has turned life's corner for the better.

If released, Mr. Richardson plans to reside in Georgia with his adult daughter and her family. His family is prepared to assist with his transition back to the community. This Court may impose additional conditions of supervised release if deemed necessary to protect the public or to deter the defendant. 18 U.S.C. § 3582(c)(1)(A). Specifically, this Court can direct that part of Mr. Richardson's term of supervised release be served under home confinement. *See, e.g., United States v. Raia*, No. 18-657, Doc. No. 91 (D.N.J., May 7, 2020).

## IV. Conclusion

For these extraordinary and compelling reasons, Mr. Richardson asks this Court to reduce his custodial sentence to time served under its authority in 18 U.S.C. § 3582(c)(1)(A). A sentence reduction is warranted, as Mr. Richardson has served approximately 70 percent of his sentence, has a "minimum risk of recidivism" classification, has a suitable release plan, faces three years of supervised release to follow, and is substantially at risk, given his prior COVID-19 diagnosis.

                Respectfully submitted,

                *s/ Lisa Van Hoeck*

                Lisa Van Hoeck
                Assistant Federal Public Defender