

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*402 East State Street*  *609-989-2020*
*Trenton, New Jersey 08608*

March 15, 2021

The Honorable Peter G. Sheridan
United States District Judge
United States Courthouse
402 E. State Street
Trenton, New Jersey 08608

    Re:   United States v. Maurice Richardson
              Crim. No. 12-576 (PGS)

Dear Judge Sheridan:

    The United States submits this letter brief in response to Maurice Richardson's second application for compassionate release under the First Step Act and 18 U.S.C. § 3582(c)(1)(A). Richardson's application must be rejected for the same reasons as his previous application, which this Court carefully considered and rejected. [*See*, ECF Filings ("ECF") # 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52]. This Court has already found that despite his medical concerns, Richardson's immediate release would be inappropriate based on the offense of conviction, Richardson's managed medical condition, and the amount of time remaining on his sentence. [ECF #52]. Richardson's subsequent contraction of COVID-19, which has been adequately and appropriately treated by the Bureau of Prisons ("BOP") medical staff at Federal Correctional Institution Fort Dix ("FCI Fort Dix"), does not change this analysis. Moreover, to the extent that Richardson is raising a new claim, it is barred by his failure to exhaust his administrative remedies. Accordingly, Richardson's renewed application should be denied.

1

## I.    Background.

As the Court is well aware, Richardson admitted his involvement in ten separate armed bank robberies, and he was only arrested after a high-speed chase with the police, during which fired his weapon. [*See, e.g.,* ECF # 21, 23, 52]. Richardson was sentenced to 207 months' imprisonment for these violent crimes. [ECF #25, 52].

Richardson has thus far served approximately 123 months and is currently incarcerated at FCI Fort Dix. [*See, e.g., ECF* # 34, 35, 36, 38, 39, 40, 42, 44, 45, 46, 47, 49, 50, 51, 52]. On April 21, 2020, Richardson sent the Warden at FCI Fort Dix a request for a reduction in his sentence and/or for transfer to home confinement, based on his poor health (including type II diabetes mellitus, hypertension, hyperlipidemia, and hepatic steatosis), and the conditions at FCI Fort Dix. [See ECF #52], which was at the time experiencing an increase in cases of COVID-19. This matter was extensively briefed and argued [*See, e.g.*, ECF # 34, 35, 36, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51], including two separate telephonic hearings. [ECF # 41, 48]. Ultimately the Court denied Richardson's application, holding that "the § 3553(a) factors outweigh[ed] Richardson's serious health issues" and that his "heinous conduct over a long period of time and his cavalier attitude toward the safety of police, bank tellers and the public outweigh his rationale to modify his sentence. As such, the motion for compassionate release is denied." [ECF # 52, pp. 5-6].

On March 1, 2021, Richardson filed a second motion for Compassionate Release, noting that he had contracted COVID-19 while incinerated. However, Richardson gives no indication that he has received inadequate treatment by BOP. Moreover, he did not make a request to the Warden before filing the instant application with the Court. Accordingly, Richardson's renewed application should be denied.

## II.   Discussion.

### A. To the Extent Richardson Raises A New Claim It Must Be Denied as He Has Not Exhausted His Administrative Remedies.

18 U.S.C. § 3582(c)(1)(A) requires that a request for compassionate release be presented first to the Bureau of Prisons for its consideration. Only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the Bureau's failure to move on the defendant's behalf, may a defendant move for compassionate release in court.  That restriction is mandatory, and it continues to serve an important function during the present crisis.  The Third Circuit recently confirmed: where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point."  *United States v. Raia*, -- F.3d --, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Exhaustion is required before presenting a successive motion on new grounds.  *United States v. Cain*, 2021 WL 388436, at *4 (D. Me. Feb. 3, 2021) ("Successive compassionate release motions must independently satisfy the exhaustion requirement. . . . . Even though Mr. Cain made a similar request for release in August 2020, these factors may well have changed in the ensuing months and the statute contemplates that the warden be given an opportunity to make an internal assessment based on then current conditions.");  *United States v. Goodwin*, 2020 WL 7316110, at *2 (E.D. Mich. Dec. 10, 2020) (when presenting a successive motion based on new grounds, the defendant must exhaust again)

Here, Richardson did not apply to the BOP before filing his second motion to the Court.  Accordingly, to the extent this can be considered a new claim, it must be denied because Defendant has not exhausted his administrative appeals.

### B. The Defendant's Renewed Motion Should Again Be Denied Based on the Offense of Conviction, Richardson's Managed Medical Condition, and the Amount of Time Remaining on Defendant's Sentence.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, allows a Court to modify a previously-imposed term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin,* 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

The Court already found that Richardson is at an increased risk of death or serious illness should he contract COVID-19 when it ruled against his release in his initial application. [ECF #52 p.5]. Nevertheless, the Court denied Richardson's initial application, holding that "the § 3553(a) factors outweigh[ed] Richardson's serious health issues" and that his "heinous conduct over a long period of time and his cavalier attitude toward the safety of police, bank tellers and the public outweigh his rationale to modify his sentence. As such, the motion for compassionate release is denied." [ECF # 52]. Richardson's subsequent contraction of COVID-19, which has been adequately and appropriately treated by the BOP medical staff at FCI Fort Dix, does not change this analysis.

As an initial matter, the government opposes Richardson's release while he is being treated and/or is recovering from COVID-19, in order to protect public health. *See, United States v. Davis*, No. 06-20020-002, 2020 WL 2395977, at *2 (C.D. Ill. May 12, 2020) ("[R]eleasing [the defendant] into the community while he has COVID-19 is a danger to the safety of the community."); *United States v. Bobroff*, 2020 WL 4271712, at *3 (D. Colo. July 24, 2020) (release is not warranted where inmate tested positive and is being treated; "releasing Mr. Bobroff under the present circumstances would create a risk of infection for individuals who come into contact with him, such as his family members and Probation Office employees.") This is especially true here, where Richardson has offered no information at to his ability to quarantine if he to be released.

Courts have consistently concluded, a positive test for COVID-19 cannot demonstrate an extraordinary and compelling reason to justify release absent complications or inadequate care. *See United States v. Banner*, No. 2:12-CR-093, 2020 WL 4289597, at *2–3, 2020 U.S. Dist. LEXIS 132060, at *6–8 (E.D. Tenn. July 27, 2020); *United States v. Gibson*, No. 2:09-CR-42, 2020 WL 4299630, at *2-3, 2020 U.S. Dist. LEXIS 132059, at *7-8 (E.D. Tenn. July 27, 2020); *United States v. Reece*, Case No. 16-20088-JAR, 2020 WL 3960436, at *6, 2020 U.S. Dist. LEXIS 122316, at *15 (D. Kan. July 13, 2020); *United States v. Davis*, Case No. 06-20020-002, 2020 WL 2395977, at *2, 2020 U.S. Dist. LEXIS 83155, at *4 (C.D. Ill. May 11, 2020); *United States v. West*, No. 2:16-CR-00117-1-JRG, 2020 WL 5520929, at *2 (E.D. Tenn. Sept. 14, 2020) ("While the Court sympathizes with Ms. West's concerns and her condition, her positive test for COVID-19 now renders her motion moot.")

Indeed, the contrary is true. Where an inmate has already tested positive for COVID-19, courts have found that this reduces the compellingess of the risk. *See, e.g., United States v. Epstein*, 2020 WL 2537648, at *5 (D.N.J. May 19, 2020) (denying request from an inmate who had tested positive for COVID-19 and noting that "[i]n fact, one of the primary reasons why Defendant is recovering well from COVID-19 is the medical treatment that the BOP has been providing."); *United States v. Billings*, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) ("At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical. That uncertainty militates against an entitlement to compassionate release. . . . Indeed, in other cases where inmates have

5

recovered from COVID without lingering symptoms, courts have found the theoretical risk of reinfection does not present a compelling reason warranting compassionate release.") (citing cases); *United States v. Risley*, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) ("Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release."); *United States v. Zahn*, 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020) ("the immediate threat to Zahn has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release."); *United States v. Kim*, 2020 WL 3213312 (D. Haw. June 15, 2020) (same); *United States v. Curtiss*, 2020 WL 3146506, at *2 (W.D.N.Y. June 15, 2020) (same). In short, Richardson's COVID-19 infection has not resulted in the severe medical complications that his motion portends. This undermines his present claim that his condition and circumstances are "extraordinary and compelling."

Richardson's medical conditions are appropriately managed at FCI Fort Dix, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19 and would also act to treat Richardson should he become re-infected with COVID-19. *See* https://www.bop.gov/coronavirus/. Indeed, the mortality rate as a percentage of the total population of BOP prisoners is less than 0.18% (225 deaths with total population of 125,002). By comparison, in New Jersey, the mortality rate as a percentage of the total population is approximately 0.27% (23,903 deaths with total population of 8.882 million). *See*, https://news.google.com/covid19/map?hl=en-US&mid=%2Fm%2F05fjf&gl=US&ceid=US%3Aen.

Indeed, statistically, the outcomes are better for those who contract COVID-19 in BOP custody than for those who contract it in the general United States population. The number of deaths as a percentage of the total number of persons contracting COVID-19 since the beginning of the pandemic (total positive cases) for BOP overall is less than one-half of percent (225 deaths with 47.059 total positive cases). At FCI Fort Dix, the deaths as a percentage of total positive cases is, even lower  (1 death with 1,816 total positive cases). By comparison, in New Jersey, the number of deaths as a percentage of the total positive cases is substantially higher -- approximately 3% (23,903 deaths with 838,024 total positive cases). Accordingly, it is simply not accurate that the

defendant is substantially more likely to get seriously ill and die from COVID-19 because he is in in BOP custody at FCI Fort Dix, rather than in the general United States population.

 Finally, the Court must again also consider whether the inmate poses a danger to the community and all other pertinent 3553(a) factors, including the defendant's history and characteristics, the time remaining on the sentence, the quality of the release plan, etc. Richardson should be required to serve the sentence that this Court imposed for his criminal conduct.  Richardson was sentenced to 207 months' incarceration for this conduct.  Richardson fails to demonstrate how release reflects the seriousness of the offense, promotes respect for the law or provides just punishment for the offense.  *See* 18 U.S.C. § 3553(a)(2)(A).  Here, of course, the most compelling 3553(a) factor is the seriousness of the offense.  The seriousness of the instant offenses can hardly be overstated. Put ins its starkest terms: The defendant robbed at least ten (10) banks; The defendant used a gun to rob at least some of these banks; and in fleeing from his last bank robbery he not engaged in at a high-speed chase, and shit the firearm during the course of that high-speed chase with the police. To describe this crime spree as "serious" is a gross understatement; it is shocking.

 Consideration of the factors above shows that Richardson's release would be inappropriate based on the offense of conviction and Richardson's managed medical condition.  *See e.g., United States v. Belle*, 2020 WL 2129412 (D. Conn. May 5, 2020) (notwithstanding asthma, compassionate release denied due to history of violence and firearms offenses); *United States v. Miranda*, 2020 WL 2124604 (D. Conn. May 5, 2020) (55-year-old has diabetes; has served 54 months of 74-month term for drug crime; compassionate release denied in light of history of drug crimes and threatened violence); *United States v. Stuyvesant*, 2020 WL 1865771, at *7 (S.D. Fla. Apr. 14, 2020) (compassionate release denied even assuming that the defendant suffers from end-stage renal disease; he is a repeat drug offender who committed offenses while suffering from the same condition).

7

## **Conclusion**

In sum, upon consideration of all pertinent factors, Defendant's motion for compassionate release should be denied. Defendant's asserted reasons are neither extraordinary nor compelling, and release at this point would be inappropriate based on the offense of conviction, Richardson's managed medical condition, and the amount of time remaining on his sentence.[1]

Respectfully submitted,
RACHAEL A. HONIG
Acting United States Attorney

By: *s/ R. Joseph Gribko*
R. Joseph Gribko
Assistant U.S. Attorney

cc:   Lisa Van Hoeck, Esq.

---

[1] If the Court elects to grant a sentence reduction, the government asks that the Court impose a substantial term of home confinement as a condition of supervised release. The Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the Court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; see 18 U.S.C. § 3583(d).