RECEIVED

APR 2 7 2022

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,
      Plaintiff,

  v.

MAURICE RICHARDSON,
      Defendant.

CRIM. NO.
12-576(PGS)

HONORABLE JUDGE SHERIDAN


EMERGENCY MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO THE FIRST STEP ACT, 18 U.S.C. § 3582(C)(1)(A)(i),
AND FOR APPOINTMENT OF COUNSEL UNDER 18 U.S.C. § 3600(c)


RESPECTFULLY SUBMITTED,
BY DEFENDANT, PRO SE

3/9/22
DATE:

Maurice Richardson
Reg. No. 62985-050
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

## I. RELIEF REQUESTED

Defendant, Maurice Richardson, respectfully moves for "Emergency Motion for Compassionate Release", pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, defendant requests that the Court promptly resentence him to time served and order his release from Federal Correctional Institution Fort Dix in New Jersey. Defendant requests the Court immediately place him on home confinement, in light of defendant's age, medical conditions, Rehabilitation, FCI Fort Dix Failure to safe keep and protect inmates, The First Step Act; as well as the Covid-19 pandemic that is rapidly spreading, causing deaths within the country and particularly among those in controlled institutions, such as nursing facilities and prisons and to which defendant is acutely susceptible. Defendant's emergency motion for compassionate release can and should be heard immediately.

Defendant also request the Court to consider the deprived conditions he faces as he has been on lockdown since March of 2020, due to the pandemic.

The Defendant further request that Counsel be appointed to his case under 18 U.S.C. § 3600A(c) and that the Court consider this motion on an expedited basis as each day in custody brings renewed and substantial risk to Mr. Richardson.

-1-

## II. __INTRODUCTION__

The Covid-19 pandemic is spreading so rapidly that, in the time it takes to rule on this motion, the facts will have changed for the worse, according to leading experts of the Center for Disease Control (CDC), and the National Institute of Health (NIH), each of which have alerted the nation that a resurgent, or another wave is forthcoming. Furthermore, The First Step Act expanded this Court's authority to reduce defendant's sentence. Defendant's Motion should be addressed immediately, as things have changed for the worst at FCI Fort Dix.

Those detained in jails and prisons face particularly grave dangers. The aforementioned experts have stated; Realistically, the best - perhaps the - only way to mitigate the damage and reduce the death toll is to decrease the jail and prison populations by releasing as many people as possible. The number of inmates infected by COVID-19 at FCI Fort Dix is the greatest in the country.

Defendant presents no danger to the community at this time. Defendant's strict Release Plan, family and out-side support presents little to no risk of recidivism.

### III. BACKGROUND

1. DEFENDANT'S CONVICTION, INCARCERATION, AND SCHEDULED RELEASE

In 2012, Mr. Richardson was indicted on a multi-count indictment involving bank robbery, Count (1), violation of 18 U.S.C. 2113 (A) and (d), and Count (2), 18 U.S.C. 924(C)(1)(a)(iii), discharging a firearm during a crime of violence.

Mr. Richardson pled guilty to two Counts of the indictment, and was sentenced to 17 years imprisonment. Mr. Richardson is currently being held at FCI Fort Dix, which is a low security BOP facility.

Defendant is now approximately 10 years through his 17 year sentence and the Federal Bureau of Prisons ("FBOP") approximate that, with credit for good time served - and given six months halfway-house and First Step Act credits - he could be released in 2024 approximately 2 years from now.

----

The Judges of this Court have written extensively about the pandemic. Specifically how highly contagious the virus is. See Coronavirus Disease 2019 (Covid-19), How COVID-19 Spreads, Ctrs. For Disease Control and Prevention (Apr 2, 2020) https://bit.ly/2XoiDDh. Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. Thus far, the only way to slow the spread of the virus is to practice "social distancing." Seer Coronavirus Disease 2019 (COVID-19), How to Protect Yourself and Others, Ctrs. For Disease Control and Prevention, https://bit.ly/3dPA8Ba

## IV. <u>CURRENT CONDITIONS AT FCI FORT DIX</u>

Fort Dix Prison is the largest prison in the FBOP and has the largest inmate population. All of the units are at minimum 75 years old. Showers, phones, and computers are shared between 300 plus inmates. This coupled with an inadequate ventilation system and overcrowding can lead to more COVID-19 related deaths than any other prison in the country.

The CDC's mandate of social distancing of 6 feet is impossible to adhere to at Fort Dix due to severe overcrowding. Giving the substantial number of inmates housed in one unit (300+), by cramming 12 inmates per room creates a cataclysmic environment for a deadly outbreak of COVID-19. A petri dish so to say. In a class action lawsuit filed by the ACLU seeking relief for inmates at Fort Dix, Warden David Ortiz is quoted saying "social distancing is not possible in this environment."

Individuals "are at special risk of infection, given their living situations" and "may also be less able to participate in proactive measures to keep themselves safe." Indeed, the tactics the CDC recommends to prevent the spread of the disease, including frequent hand washing, the use of alcohol based hand sanitizeres, social distancing, wearing face mask, and other protective gear, and frequent disinfecting of living spaces - are difficult - if not impossible for inmates incarcerated at Fort Dix.

-4-

Effective Monday August 23,2021, the Bureau of Prisons have implemented new COVID-19 operation levels in consideration of recently published CDC guidance for Correctional Institutions. The COVID operational levels are based upon a color-coded tiered approach which addresses infection control measures, inmate programming, service needs, movement, staff screening and testing guidance. This tiered approach utilizes three indicates for each institution to determine a modified operation level.

The three indicates utilized are; (1) medical isolation rate within the institution (active cases) (2) Facility vaccination rates (includes staff and inmates) and (3) Community transmission rates in the surrounding communities of our institutions. A percentage based formula is applied to these three indications and determining the level of modified operations; those levels are: Level 1 Operations minimum Modifications (community referred to as Green) Level 2 operations Moderate Modifications (commonly referred to as Yellow) and Level 3 operations - Intense modifications (commonly referred to as Red).

FCI Fort Dix has been operating on Red since implementation of this new system, that is due in part, because of the active cases of COVID-19 inside the facility and the community transmission rate being high.  In spite of Level 3 operations (Red) Fort Dix staff has adopted a relax attitude on mask wearing and have not taken the

-5-

necessary precautions to deter the spread of the virus. Visits are still operational and the Units are not isolated from each other. Most importantly staff is being rotated between the infected units and units free from infection. Its not a matter of if, its a matter of when, as another full scale outbreak is imminent.

This is especially true at FCI Fort Dix where social distancing is absent and mask wearing - amongst staff - is increasingly rare. All public health protections that keep people safe are non-existent at Fort Dix. Even in highly vaccinated places, the COVID-19 virus is causing outbreaks and spreading rapidly.

There are ongoing constitutional violations at FCI Fort Dix as Fort Dix officials have continued to contravene COVID-19 protocols and have negligently exposed inmates to COVID-19. Recently, there was an outbreak of COVID-19 in Mr. Richardson's unit. On or about January 4, 2022, inmate Tim Anderson (Reg. No. 20152-084) and Mark Dean who were both fully vaccinated and in need of emergency care tested positive for COVID-19 was removed from unit 5702. All inmates, approximately 300 were exposed to these two inmates. No other inmate in the unit was tested and unit team haphazardly separated unvaccinated inmates from vaccinated inmates and locked the vaccinated inmates on the first and second floor and the unvaccinated inmates on the third floor. As there are approximately 200 vaccinated inmates, the living conditions on the first and second

-6-

floor are severely overcrowded as inmates are piled one on top of another 30 deep in the TV rooms.

Fort Dix officials did not test and refused to separate inmates with symptoms.  Instead, official separated vaccinated inmates from unvaccinated inmates and left inmates with symptoms in both groups. To date, officials at Fort Dix refuse pursuant to policy, to test vaccinated inmates despite having confirmation that these inmates were exposed to COVID-19 and are displaying symptoms.  Staff have repeatedly stated if your vaccinated you don't need to be tested.

As such, these vaccinated inmates were allowed to potentially spread the virus throughout the prison and community as vaccinated inmates - even though displaying symptoms - are still allowed to program and go to visits.  As a result, there are still confirmed cases of COVID-19 spreading throughout Fort Dix prison.

Ultimately, Fort Dix is not as concerned of the health and well being of its prisoners as it is concerned with keeping the number of positive cased down as one staff member has stated: "If we don't test we don't have to report."

-7-

## V. THE FIRST STEP ACT

The Court's authority to grant Defendant's request for
Compassionate Release is governed by 18 U.S.C. § (C)(1)(A), as amended
by the First Step Act of 2018.  This section allows for judicial
modification of an imposed term of imprisonment when three criteria
have been met:

(1) the defendant has first exhausted all administrative remedies with
the BOP or at least allowed the BOP 30 days to act on his request
before seeking Compassionate Release on their own motion;

(2) extraordinary and compelling reasons warrant such a reduction; and

(3) the reduction is consistent with the applicable policy statement
issued by the Sentencing Commission and the Court has considered
the factors set forth in section 3553(a).  18 U.S.C. §
3582(C)(1)(A)(i).

An "extraordinary and compelling reason" for the reduction can be
satisfied in cases where a defendant's medical condition or overall
state of health are such that they cannot be treated effectively or
will worsen in a custodial environment.  To qualify, a defendant must
have a medical condition, age related issue, family circumstances, or
other reasons that satisfies the criteria in U.S.S.G. § 1B1.13(1)(A)
and cmt.n1. and must "not be a danger to the safety of any other person
or to the community." U.S.S.G. 1B1.13(2).

Before granting a motion for compassionate release, the Court
must review the 3553(a) factors to the extent that they are applicable
and determine the sentence reduction.

-8-

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A court cannot consider a motion for Compassionate Release unless the Defendant shows that he has fully exhausted administrative rights to appeal a failure of the BOP to bring a motion on the Defendant behalf or the lapse of 30 days from the receipt of such a request by the Warden of the Defendant's facility.

Here, Defendant exhausted his administrative remedies through the BOP, on or about January 31, 2022, as he sought Compassionate Release administratively via written letter and electronically through trulinks via staff request. More than 30 days has lapse from the receipt of the request. (Kindly refer to Exhibit - A)

## VII. <u>EXTRAORDINARY AND COMPELLING REASONS</u>

1. CHANGE IN CIRCUMSTANCES THAT COULD NOT HAVE BEEN FORESEEN
   AT THE TIME OF MR. RICHARDSON'S SENTENCING

The COVID-19 pandemic, its recent outbreak at FCI Fort Dix, and the dangerous conditions for its spread, now pose an extraordinary and perhaps lethal risk to Mr. Richardson's health. There has been an explosion of cases among inmates and staff. According to the BOP's own website there are over 1500 positive cases - thus far - at FCI Fort Dix.

Although Mr. Richardson has medical conditions known to increase the severity of the virus, the mere fact of his confinement in a correctional institution experiencing an outbreak exacerbates the likelihood that he will catch the virus, which could have devastating, long lasting effects, or still possibly lead to his death.

At FCI Fort Dix, it is impossible for Mr. Richardson to take the most basic precautions, such as social distancing. He lives in a building with over 300 inmates who all share the same bathroom, computers, and phones.  The COVID-19 virus has already reached every unit housing inmates at Fort Dix and there is an increased chance staff at the facility will carry the virus back

-10-

to their communities at home or - vice versa - contaminate the
facility as guards are being rotated throughout the prison.

While an initial wave of Compassionate Release applications
focused on those inmates who are elderly or have critical health
problems, policy makers and courts have recognized that the urgent
and unprecedented national emergency facing our country requires
that prison populations be reduced as much as possible, in a manner
consistent with public safety.  See e.g. Joint Statement from
Elected Prosecutors on COVID-19 and Addressing the Rights and Needs
of Those in Custody (March 25, 2020), https://fairandjust
prosecution.org/wp-content/uploads/2020/03/coronavirus-sigh-on-
ltter.pdf

In sentencing Mr. Richardson to 17 years imprisonment, the
Court determined that the sentence was reasonable under 18 U.S.C. §
3553(a).  But now, we are at a new stage, with a new set of facts
and circumstances.  We are amongst a pandemic and Mr. Richardson is
forced to try and protect himself during an outbreak at the
facility he is housed in, which is impossible given his living
situation.  The Court did not sentence Mr. Richardson to suffer
such consequences or death.

-11-

## 2. MR. RICHARDSON MEDICAL CONDITIONS

Mr. Richardson, the defendant is 54 years old and suffers from, Diabetes and Hypertension, which puts him among those most vulnerable to COVID-19, and he is likely to suffer dire consequences if he were to contract this disease while in custody. As documented by his medical records spanning this last year, the defendant has exhibited complications, and has been receiving treatment for his medical conditions.

### A. Diabetes

The first study of COVID-19 to specifically analyze the effect of the disease in hospitalized patients with diabetes has found that one in ten patients dies within 7 days of hospital admission, and one in five is incubated mechanically ventilated by this point.  The research is published in Diabetologia (the journal of the European Association for the study of Diabetes (EASD)), by professor Bertrand Cariou and professor Samy Hadjadj, diabetologist at l'institut du thorax, University Hospital Nantos, INSERN, CNRS, and university of Nantes, France, and collesgues.  The study show that the majority of hospitalized subjects had type 2 diabetes (89%) while only (3%) had type 1 diabetes with other types of diabetes in the remaining cases.

-12-

Microvascular complications (eye, kidney, and nerves) were found in 47% of the subjects in the study, while macrovacular complications (arteries of the heart, brain, legs) were present in 41% of the patients analyzed. Across all patients in the study, by day 7 one in five (20.3%) had been incubated and placed on a ventilator in intensive care, and one in ten (10.3%) had died. Most importantly, Diabetes is a condition recognized by the CDC which increased the risk of death if infected with COVID-19.

## B. Hypertension

The CDC has stated that Hypertension is a medical condition that puts people "at risk" of severe illness from COVID-19.

## C. Alcoholic Fatty Liver Disease

As the number of COVID-19 patients grows, doctors are learning its damage can extend well beyond the lungs, the disease can also affect the brain, heart, cvascular and digestive systems, kidneys and liver. "It seems to strike so many systems, said Maya Rae, a nephrologist at New York - Presbyterian Columbia University Irving Medical Center in New York.

-13-

More than 4 in 5 people who have sysptoms of COVID-19 get mildly sick.  But if you have ongoing health issues, including liver disease, the virus may be more likely to leave you seriously ill.  Among those who have long term liver disease, 40% were admitted to the hospital and nearly half needed intensive care.  In some severe cases of COVID-19, the virus may prevent the liver from working right.  One study in China showed that up to half of people with the new coronavirus, had liver dysfunction at some point.  "With the number of cases increasing in China, abnormal liver function test results have been in some patients with COVID-19 making the organ the most frequently damaged outside of the respiratory system. (see footnote) .  Thus, recent studies has shown Mr. Richardson's mncrease his risk of death to over 10% if infected with COVID-19.  Mr. Robinson's medical conditions combined further supports Compassionate Release.

---

Journal of Clinical and Translational Hepatology, Xia & He Publishing Inc. (USA) Characteristics and Mechanism of liver injury in 2019 Carona Virus Disease.

3. DEPRIVED CONDITIONS SUFFERED DURING INCARCERATION

Defendant also had to endure misery as he has been deprived during his incarceration since March of 2020 when Fort Dix went into lockdown status because of the pandemic.  Since March of 2020. Defendant suffered as he has been deprived of Visits, Movement, Commissary, Recreation, Programming, Medical, Education, Work Detail, COVID-19 testing, not to mention the fear and anxiety of being infected by the COVID-19 virus.

"A day spent in prison under extreme lockdown and legitimate fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing." See **United States v. Rodriguez**, No. 00Cr.761-2(JSR), 2020 WL 5810161, at 3 (S.D.N.Y. Sept. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive that would otherwise have been the case.  This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." (citation omitted)).

-15-

Defendant would like the Court to consider the past year and a half in which he has experienced heightened deprivation and to have experienced unexpectedly punishing conditions spent in prison to offset the need for him, in order to assure just punishment, to serve the remainder of his time in prison, as opposed to in a less restrictive confinement where he can social distance and protect himself during the COVID-19 pandemic. Given the present circumstances releasing the Defendant before his scheduled release date would be consistent with the sentencing imperatives. The Public no longer needs to be protected from the Defendant.

Furthermore, the Defendant's incarceration in the midst of a global pandemic "has increased the severity of the sentence beyond what was originally anticipated." The deprived conditions the Defendant faced since March of 2020 are extraordinary and compelling to warrant Compassionate Release or a reduction in sentence. See United States v. Lizardi, 11Cr.1032-55(PAE) (decided October 9, 2020).

## 4. REHABILITATION

"Rehabilitation of the Defendant alone shall not be considered" sufficiently extraordinary and compelling to justify compassionate release see § 994(t).

### A. CONGRESS INTENT

The language of a "statute should be construed to give effect to all its provisions. The Word "alone" allows courts to consider rehabilitation as a part of a compassionate release motion. Thus, several Courts have found a defendant's rehabilitation to be part of the extraordinary and compelling reasons favoring release. Therefore, Mr. Richardson request the court consider his Rehabilitation as a reason justifying Compassionate Release.

To start, Mr. Richardson has completed approximately a dozen educational courses including but not limited to "Save the Youth" and various apprenticeship courses. Mr. Richardson has continuously programmed and has maintained employment during his incarceration. This record is not indicative of someone who currently presents a danger to society. Upon release Mr. Richardson will remain law-abiding.

-17-

6. FCI FORT DIX FAILURE TO SAFE-KEEP AND PROTECT.

Prisons have proven to be COVID-19 preferred environments in the United States.  The Government response has been grossly inadequate in the face of the imminent risks prisoners live. The crisis in federal facilities is best characterized by Fort Dix inability to implement basic safety measurese.

Mr. Richardson has witnessed first hand Fort Dix failures underlying the flood of COVID-19 infections.  During the last outbreak of COVID-19 Fort Dix did not isolate and remove infected inmates from general population.  This is a completely different picture than the BOP's Action Plan.  During the outbreak Fort Dix staff displayed alarming failures, such as: "staff ignored or minimized prisoners' COVID-19 symptoms, and mixed the sick and healthy together in haphazard quarantines"; "vaccinated inmates displaying symptoms were allowed to program and go to visits spreading the virus not only to the general population but also to the community.  "Correctional officers and other staff felt pressured to work even after being exposed to sick prisoners"; federal officials have allegedly tried to conceal the extent of the outbreak by limiting testing--so they didn't have to report positive cases.

Back in 2016, the Office of Inspector General warned that the "BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide

limited training for this purpose".     The report found that BOP lacked medical resources for their incarcerated communties. This was without a pandemic.  The BOP has failed to provide the assistance needed for these incarcerated communties.  A key protocol of Fort Dix response have opted for isolating vaccinated inmates from unvaccinated inmates and leaving the sick with symptoms in both groups, which can reasonably be inferred to inflate the amount of deaths in custody since COVID-19 patients frequently desend rapidly into a crisis condition. As cases continue to climb, it is more imperative than ever that the Court takes strides to correct the systemic neglect of our incarcerated communities and the subsequent national effects on the community-at-large.

The Fort Dix facility is not equipped to care for Mr. Richardson if he unfortunately is infected with COVID-19. Inmates feel powerless to protect themselves against the virus that has been spreading within Fort Dix walls.  Fort Dix is currently facing an serious outbreak of COVID-19 infections. Thus far, over 1,500 inmates have tested positive.  Given the woefully insufficient amount of testing at FCI Fort Dix and re-infections occurring, it is likely the number of infected inmates is under reported.  Fort Dix has shown an inability to successfully contain the outbreak thus far.

## VIII. 3553 FACTORS

1. 3553 FACTORS IN 18 U.S.C. 3553(a) AND THE RELEVANT POLICY
   STATEMENT IN U.S.S.G. § 1B1.13 WEIGH IN FAVOR IN GRANTING MR.
   RICHARDSON'S MOTION FOR COMPASSIONATE RELEASE.

Having determined that Mr. Richardson has presented
"extraordinary and compelling reasons" supporting Compassionate
Release, the Court must still consider a variety of factors when
imposing a reduced sentence.  Mr. Richardson criminal record is
serious.  But, as compared to other individuals, he record is not
egregious at all.  An indicator of whether Mr. Richardson poses a
danger is his behavior over the past 10 years while he has been in
BOP custody.

While incarcerated Mr. Richardson has not incurred any serious
disciplinary infractions.  This reflects his maturation and self
control.  His prison record shows he has conducted himself in a
manner to show that there is a low risk of recidivism.  Mr.
Richardson age combined with his prison record demonstrate the
public will not need to be protected from him now or when he is
scheduled to be released.

A reduction in sentence in this case will save Mr. Richardson's life. His request for a sentence reduction due to his severe health complications combined with the COVID-19 virus are consistent with factors in 3553(A), as mandated by 18 U.S.C. 3582(C)(1)(a).

Two of those factors now carry more weight than at the time of sentencing: 1) the history and characteristics of the defendant, including post-conviction conduct 3553(a)(1); and 2) the need for the sentence imposed to provide the defendant with medical care in the most effective manner.

Mr. Richardson is 54 years old and vulnerable to COVID-19, which weighs in favor of a reduced sentence given the deadly path of the virus. Mr. Richardson, as previously stated suffers from diabetes, hypertension, and Alcoholic Fatty Liver Disease. These conditions in the context of COVID-19 places him on the top of the chart for risk of death.

The Court should also consider Mr. Richardson's post-conviction conduct while incarcerated in support of his reduction in sentence (See Pepper v. United States, 562 U.S. 476, 491, 131 S. Ct 1224, 179 L.Ed. 2d, 196 (2d) (2011)).  Mr. Richardson has been incarcerated for over a decade.  He has taken advantage of programs offered by the BOP and has participated in thousands of hours of calssroom time geared towards his rehabilitation and personal growth.

Mr. Richardson also was a mentor in both "Save Our Youth" program and the "Young Fathers" program, both created and designed to save the young inmates from destructive behavior that leads back to prison.  Mr. Richardson has mentored these programs without the prospect for early release for himself.  This is a clear attribute of 3553(a), which is ripe for consideration in the context of his post-conviction conduct.

Mr. Richardson has been a model prisoner and has been in constant pursuit of his rehabilitation since his incarceration. Mr. Richardson post conviction conduct, combined with his age and health conditions shows he is not a threat or harm to the community.

-23-

RELEASE PLAN

Mr. Richardson has developed a re-entry plan that will prevent recidivism and ensure his health and safety. Mr. Richardson has coordinated with family to be picked up at Fort Dix, and taken to Georgia, where he will reside. He will be able to self quarantine to keep himself and others safe from the virus. He is eligible for the Affordable Care Act, which along with family will help him pay for daily living. He will aslo sign up with state medicare to help maintain his health conditions during the pandemic.

Though Mr. Richardson has additional time remaining on his sentence, he was not sentenced to death. Mr. Richardson represents the most vulnerable in our prison system, and steps must be taken to protect him and other like him. The COVID-19 virus has rapidly spread across the nation, killed thousands, and is now present at FCI Fort Dix. Mr. Richardson, without a doubt, is at risk and statistically will face severe complications or death if infected with COVID-19.

-24-

## CONCLUSION

For the foregoing reasons Mr. Richardson respectfully urge the Court to grant his motion for Compassionate Release, reduce his sentence to time served, and convert the remainder of his sentence to home confinement. It is respectfully requested in the alternative that Mr. Richardson motion be granted in part and his prison sentence be reducede by an appropriate amount given the time he has spent in deprived conditions and/or his rehabilitation efforts.


Thank you so much for your consideration.


RESPECTFULLY SUBMITTED,

BY THE DEFENDANT, PRO SE


3/9/22

DATE:                                          Maurice Richardson

---

See United States v. Booker, 976 F.3d 228, 237 (2d Cir. 2020)
(Compassionate Release is a misnomer....A disetrict court
coulde...reduce bu not eliminate a defendant's prison sentence;
United States v. Garcia, No. 11-CR-989 (JSR), 2020 WL 7212962,
at 3 (S.D.N.Y. Dec 8, 2020) ("If [the Court] were imposing
seentence on Garcia afresh, wieh full foresight of these COVID-
19 related conditions, it would have sentenced him to 240 months
imprisonment rather than 280 months")