Maurice Richardson
Reg. No. 62985-050
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

Hon. Peter G. Sheridan
U.S. District Judge
District of New Jersey
U.S. Courthouse
402 E. State Street
Trenton, NJ 08608

RE: Update in status of COVID-19 outbreaks at FCI Fort Dix.

Civ. 12-576 (PGS)

Dear Judge Sheridan,

Mr. Richardson wants to update the court with new information as new cases of COVID-19 have rapidly emerged in FCI Fort Dix and in his Unit 5702.  On September 28, 2022 inmate David Shores was scheduled to be transferred and as procedure was tested for COVID.  He tested positive for COVID-19.  This inmate and his room (room 339) was isolated and removed from the unit.  The problem with this is that all the inmates in the Unit was exposed to Mr. Shores just not his room, as Mr. Shores has been displaying symptoms for days prior to his test. Mr. Shores had used the computers, showers, bathrooms, and phones along with every other inmate in the Unit.  He went to the Kitchen to eat and to the Gym thereby also exposing inmates outside of the Unit and Officers.  More importantly no other inmate in the building was tested and the Unit was not isolated from other Units as Fort Dix simply refuse to test inmates that were exposed and that are

-1-

displaying sympotms.  In Mr. Richardson's Affidavit attached hereto he attest to about 25% of the inmates in his Unit (5702) displaying symptoms now.

The BOP is failing to protect Inmates from Covid-19 in violation of the Due Process clause.  When the BOP takes a person into custody against that person's will, the Constitution imposes upon the BOP a duty to assume responsibility for that inmate's safety and general well being.  See Helling v. McKinney, 509 U.S. 25, 32 (1993).  Under the Eighth Amendment, the BOP must provide inmates with basic human needs, including reasonable safety.  Helling, 509 U.S. at 32.  The BOP violates the Eighth Amendment if it confines inmates in unsafe conditions.  See Helling, 509 U.S. at 33.  Moreover, the BOP may not "ignore a condition of confinement that is sure or very likely to cause serious illness."  Helling, 509 U.S. at 32.

The law is clear, the BOP cannot put an inmate into a dangerous situation, especially where that dangerous situation was created by the BOP, and exposing an individual to a danger which he would not have otherwise faced.  (See DeShaney v. Winnebago County Dep't of Social Servvs., 489 U,S, 189, 201 (1989)).  Thus, an inmate's constitutional rights are violated if a condition of his confinement places him at a substantial risk of suffering serious harm, such as harm caused by a pandemic and especially harm caused by not testing exposed inmates and inmates that are displaying symptoms.

Here, defendant argues that the conditions and lack of action by officials at FCI Fort Dix expose him to a substantial risk of suffering serious harm - increasing his exposure to contracting COVID-19.  When the BOP fails to provide for an inmates's basic human needs, including medical care and reasonable safety, the Due Process Clause is violated.  DeShaney v. Winnebago Cty Dep't of Soc. Servs., 489 U.S. 199, 200 (1985).  Moreover, defendant is facing a looming threat from exposed inmates that are displaying symptoms and were never tested.

Federal officials at FCI Fort Dix have concealed the extent of the outbreak by limiting testing in disregard of the inmates ssafety, health, well being and Constitutional Rights.  This is the 3rd outbreak in Mr. Richardson's Unit and a pattern is emerging about how Fort Dix is handling COVID-19 outbreaks.  Don't test seems to be the strategy.  This allows the Government to argue - as in Mr. Richardson's case - that there are little to no positive cases of COVID-19, when the opposite is true.  As of right now, there are dozens of inmates that are sick in Mr. Richardson's Unit alone.

On September 28, 2022, the same day Mr. Shores tested positive, Fort Dix posted a memo on the computer.  The memo states the following:

"COVID-19 Notice - Inmates

    Please be advised, an inmate from 5702 has tested positive for the COVID-19 virus.  This inmate was placed on Isolation and close contacts were placed in Exposure Quarantine.

In the past 10 days, 4 inmates, from 4 different housing Units have tested positive for COVID-19..."

The statement in the memo that "in the past 10 days, 4 inmates, from 4 different housing Units have tested positive for Covid-19" is belied by common sense.  As highly contagious COVID-19 is as the court well know through research, information and past outbreaks; How can 4 inmates, from 4 different housing Units test positive with no one else in the 4 different Units testing positive?  Giving the nature of the pandemic, not being able to social distance, and inmates sharing the phones, computers, showers, bathrooms, and TV rooms - it is impossible.  A more reasonable explanation, which is the truth, these 4 inmates were scheduled to be transferred and was tested prior to leaving the prison - as per policy - and tested positive.  These 4 inmates were isolated but that was it.  If all exposed inmates in the 4 Units were tested the positive cases would be in the hundreds.  4 positive test compared to 100 positive test shows Fort Dix strategy is working for them, at the cost of inmates health, well being, and lives.  There are at minimum 30 inmates in Mr. Richardson's Unit alone displaying symptoms.

Mr. Richardson or any other inmate for that matter does not deserves to be treated like this.   Now more than ever Mr. Richardson prays for the Court's compassion and urge the court to grant his compassionate release motion as he is in the mist of another major outbreak.

RESPECTFULLY SUBMITTED
BY DEFENDANT, PRO SE

_Oct 3, 2022_
DATE:

_Maurice Richardson_
Maurice Richardson

−5−

AFFIDAVIT OF Maurice Richardson

I Maurice Richardson, being duly sworn, depose and state:

1. That I am incarcerated at FCI Fort Dix, in Fort Dix New Jersey.  I reside in Unit 5702.

2. That on September 28, 2022, inmate David Shores tested positive for COVID-19.

3. That Inmate Shores and his room (room 339) was isolated and removed from Unit 5702.

4. That inmate Shores had been displaying symptom of COVID-19 for days prior to him testing positive.

5. That inmate Shores had used the computers, phones, showers, and bathrooms along with every other inmate in the Unit.

6. That inmate Shores exposed the virus to not only the inmates in his room but to all the inmates in the Unit.

7. That inmate Shores went to the kitchen and gym while displaying symptoms, also exposing the virus to other Units and staff.

-1-

8. That Fort Dix never tested any other inmate in the Unit before or after Mr. Shores tested positive.

9. That there are at least 30 inmates displaying symptoms of COVID-19 in the Unit as of the date Mr. Shores tested positive.

10. That to date, noone in the Unit has been tested for COVID-19 even though many inmates are displaying symptoms.

11. That throughout the pandemic and outbreaks Fort Dix refuse to test inmates displaying symptoms of being infected with COVID-19.


I declare under penalty of perjury that the above statements are true and correct.

RESPECTFULLY SUBMITTED
BY DEFENDANT, PRO SE

OcT 3, 2022
DATE:

Maurice Richardson

-2-

Mr. Maurice Richardson
# 62485-050
Fci Fort Dix, correctional
p.o. box 2000
36. MDL. DT 08640

TRENTON NJ 085

3 OCT 2022 PM 4 L

Hon. Peter G. Sheridan
U.S. District Judge
District of New Jersey
U.S. Courthouse
4-02 E. State Street
Trenton NJ 08608

**RECEIVED**

AT 8:30 _____ M
OCT 05 2022
WILLIAM T. WALSH
CLERK